UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

JOHNNY N. LOYD                                    CIVIL ACTION NO. 20-0415

                                                  SECTION P
VS.
                                                  JUDGE TERRY A. DOUGHTY

JACKSON PARISH CORRECTIONAL                       MAG. JUDGE KAREN L. HAYES
CENTER, ET AL.

## MEMORANDUM ORDER

Plaintiff Johnny N. Loyd, a former prisoner at Jackson Parish Correctional Center

("JPCC") proceeding pro se, filed this proceeding on approximately April 1, 2020, under 42

U.S.C. § 1983.  He names the following defendants: Jackson Parish Correctional Center, Nurse

Tiffany, Warden Timothy Ducote, Doctor Miller, Major Leblanc, and Betty Pullij.[1]

## Background

Prior to his incarceration, Plaintiff suffered from an enlarged prostate, had "trouble

urinating," and took 9-11 different medications.  [doc. # 4-1, p. 2].  He arrived at JPCC on

Saturday, January 18, 2020.  *Id.* at 1.  He alleges that the following Monday, he informed Doctor

Miller that he needed his medications, but he could not remember the names of all the

medications.  *Id.* at 1.  Miller instructed him to sign a medical release so she could obtain his

medical records from Overton Brook VA Medical Center.  *Id.*  She also told him to ask a family

member to bring his medications to the facility so she would know what to provide.  *Id.* at 2.

Plaintiff's sister brought his medication to the facility the next morning (Tuesday), but Plaintiff

claims that he did not "hear from" Miller, and "no medication [was] on the pill cart."  *Id.*

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under
28 U.S.C. § 636 and the standing orders of the Court.

The following Thursday, Doctor Miller gave Plaintiff his prostate medication and told him that she "planned to start [him] on" other medication on Friday. *Id.* Friday morning, Plaintiff received blood-pressure medication, Ibuprofen, and "another pill . . . ." *Id.* Friday night, Plaintiff received prostate medication and Ibuprofen. *Id.* He alleges, however, that he asked for all of his medication, but a nurse told him that "they couldn't give it to [him] unless the doctor said so." *Id.* He asked "the nurses who pass out pills . . . about seeing the doctor about [his] medications and they all said that [he] would have to talk to the doctor about that. [sic]." *Id.* at 2-3.

Plaintiff alleges that, on January 26, 2020, in the "chow hall," he slipped, fell, and injured his back and neck. [doc. #s 1, p. 1; 4-1 pp. 3-4]. A physician arrived, checked his eyes and blood pressure, and gave him a "blood pressure pill." [doc. # 4-1, p. 3].

Plaintiff tentatively claims that officials attempted to place him on a board but failed to "handle the board properly . . . ." *Id.*

He claims that a doctor instructed others to transport him to a hospital in a "small minivan" instead of an ambulance. *Id.* He suggests that this was problematic because he is "6' 2" tall and weighs 225 lbs." and thus could not lay prone in the minivan. *Id.* He also claims that officials dragged, pulled, and twisted him into a wheelchair. *Id.* at 5. They handcuffed him and "stuffed" him into the minivan, which was "very painful." *Id.* Chris Combs drove the minivan, and Revend McDonald assisted in placing him in the minivan. *Id.*

Plaintiff was transported to Jackson Parish Hospital "with a back injury where x-ray results by the Dr. . . . determined that [he] had suffered a disc problem (bulging disc) and that [he] would need an operation. [sic]." [doc. # 1, p. 1]. A nurse checked his blood pressure, and he received a shot for his pain and swelling. [doc. # 4-1, pp. 4-5].

2

When Plaintiff returned to JPCC the same day, someone tested his blood pressure.  *Id.*  Doctor Miller questioned him about his fall and told him "not to walk much because she was afraid that [he] might fall . . . ."  [doc. # 4-1, p. 4].  He did not see Miller again.  *Id.*  He claims that he has not received "a blood pressure check since . . . January 26, 2020."  *Id.*

Plaintiff has "been in constant pain since" the fall.  [doc. # 1, p. 2].  He claims that, despite several verbal requests and 48 written requests to see a physician to "follow on these findings[,]" he has not received a response.  *Id.* at 1.  Presumably, by "findings," he refers to the hospital physician's surgery recommendation.

On February 13, 2020, after several verbal and written requests "to go on sick call," he received an audience with Nurse Tiffany, who told him that she was prescribing Tylenol for his pain and that he would receive muscle relaxer for his nerve pain.  [doc. # 4-1, pp. 4, 6].  She asked Plaintiff to sign "a legal document so she could get [his] medical records," but Plaintiff refused because he "already had . . . ."  *Id.* at 6.  Tiffany responded that she was aware, but "they did not get all of [his] medical records[.]"  She informed Plaintiff that if he did not sign the document, there was nothing she could "do" for him.  *Id.*  She also asked for a list of all of his medications, and Plaintiff replied that he already gave a list to Doctor Miller.  *Id.*  Tiffany then told Plaintiff that Doctor Miller "sent [his] medication back home."  *Id.*

On February 19, 2020, Plaintiff requested care for sinus congestion.  *Id.* at 8.  On February 20, 2020, Plaintiff requested care for sinus headaches, pain, and congestion.  *Id.*  He asked to "see the warden about sick call" on March 2, 2020.  On March 4, 2020, he received antibiotics.  *Id.*  He tentatively claims, however, that at that time, he had not seen a doctor or nurse since February 13, 2020, he had not received a blood-pressure check, and he had not received a temperature check.  *Id.*

Plaintiff impliedly claims that, on March 5, 2020, nurses tested everyone but him for influenza. *Id.* On March 9, 2020, "a lady" checked his temperature and informed him that he contracted influenza. *Id.* He was quarantined. *Id.* He was released from quarantine on March 12, 2020. He impliedly claims that although he received antibiotics, he only received a "temperature check." *Id.* at 9.

Plaintiff claims that, on February 28, 2020, Major Leblanc threatened to charge him with fraud if he "brought a lawyer" to the facility. [doc. # 1, pp. 1-2; 4-1, pp. 6-7]. He also claims that, on March 31, 2020, Leblanc threatened to place him in lockdown if he did not stop abusing the sick-call system. *Id.* at 9.

The night of February 28, 2020, an official manning the "pill cart" told Plaintiff that Doctor Miller prescribed Tylenol and penicillin. *Id.* at 7. Plaintiff appears to claim that the official forced him to choose only one medication and that, as a result, he did not receive Tylenol. *Id.*

Plaintiff claims that officials refused to respond to his requests to access the law library. *Id.*

Plaintiff appears to claim that, the day of his release, Betty Pullij tricked him into signing a form and relinquishing his right to drive. *Id.* at 9-11. Pullij allegedly withheld his driver's license, instructed him to sign a form with fading ink so he could be released, and, after he signed it, told him, "Oh ya now you can't drive . . . [sic]." *Id.*

Plaintiff seeks medical care, $15,000,000.00 for his pain and suffering, $10,000,000.00 for mental anguish, and the removal of "Nurse Tiffany from her position." [doc. #s 1, p. 2; 4, p. 4].

<u>**Amendment**</u>

Plaintiff should, to the best of his ability and means, file an amended complaint and provide the information below.[2] <u>Plaintiff should not repeat anything he has already stated, but Plaintiff should</u>:

> (1) identify each person he seeks relief from (i.e. identify each defendant) and provide a separate description of what, exactly, each defendant did to violate his rights; in other words, separately explain why he seeks relief from each defendant;

> (2) provide a description of the injury or harm, if any, sustained as a result of each alleged violation;

> (3) state whether, at the time of his claims, he was a pre-trial detainee, whether he was convicted of charges/crimes, or whether he was convicted and also faced pending charges; and

> (4) provide copies of any grievances, administrative remedy requests, and appeals that he filed, if any, (that are in his possession or that he may obtain) concerning each of his claims, as well as copies of any responses he received.[3]

**1. Medical Care**

With respect to *each* separate claim concerning the denial of medical care, Plaintiff should separately identify a responsible defendant, explain approximately *when* he requested assistance/care from the defendant, explain *what* he told the defendant or what he requested, explain *why* he requested assistance, and explain *how* that defendant was deliberately indifferent to a substantial risk of serious medical harm to him.

Again, Plaintiff does not need to repeat anything he has already stated, but he should also

---

[2] See *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[3] Plaintiff only needs to provide documents that are in his possession or documents that he can obtain using his best efforts. The requested documents are not necessary, but they will aid the Court in analyzing Plaintiff's claims. At this time, he does not need to seek the Court's assistance in obtaining these documents.

provide the following with respect to *each* separate allegation:

(1) a description of all medical evaluations and medical treatment that he received relative to his claims;

(2) the approximate dates he received care, evaluations, treatment, prescriptions, and medication;

(3) any medications, treatment, medical supplies, medical equipment, or apparatuses prescribed or provided for his alleged injuries or condition;

(4) the specific medications, treatment, and/or care he claims that a defendant should or should not have provided;

(5) a description of each injury, condition, or medical need he claims that a defendant deliberately failed to treat, deliberately treated incorrectly, or deliberately delayed treating;

(6) copies of any medical records that are in his possession or that he may obtain;[4]

(7) information concerning requests for medical care, including dates of requests for care, a description of what he requested or stated, and copies of any requests for care that are in his possession or that he may obtain; and

(8) any other information to establish that a defendant was deliberately indifferent (i.e. that a defendant knew of a substantial risk of serious harm to Plaintiff's health and disregarded that risk).

## Conclusion

For the foregoing reasons, **IT IS ORDERED** that Plaintiff Johnny N. Loyd shall amend his Complaint, within **thirty (30) days** of the filing of this Order, to cure the deficiencies outlined above. Plaintiff shall dismiss any claims that he is unable to cure through amendment. Plaintiff shall also notify the Court of any change in his address under Local Rule 41.3.

Failure to comply with this Order may result in dismissal of this action as frivolous under

---

[4] If Plaintiff does not possess copies of medical records, he only needs to make a reasonable attempt to obtain them. He does not, at this time, need to seek the Court's assistance in obtaining any records.

6

28 U.S.C. § 1915(e)(2)(B)(i) or dismissal under either Federal Rules of Civil Procedure 41(b) or 16(f).

    In Chambers,    Monroe,Louisiana, this 18th  day of May, 2020.

 

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE