UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **JOHNNY N. LOYD** | **CIVIL ACTION NO. 20-0415** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **JACKSON PARISH CORRECTIONAL CENTER, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## **REPORT AND RECOMMENDATION**

Plaintiff Johnny N. Loyd, a former prisoner at Jackson Parish Correctional Center ("JPCC") proceeding pro se, filed this proceeding on approximately March 30, 2020, under 42 U.S.C. § 1983. He names the following defendants: Jackson Parish Correctional Center, Nurse Tiffany, Doctor Miller, Major Leblanc, and Betty Pullij.[1,2] For reasons that follow, the Court should dismiss Plaintiff's claims.

## **Background**

Before his incarceration, Plaintiff suffered from an enlarged prostate, had "trouble urinating," and took 9-11 different medications. [doc. # 4-1, p. 2]. He arrived at JPCC on Saturday, January 18, 2020. *Id.* at 1. He alleges that the following Monday, he informed Doctor Miller that he needed his medications, but he could not remember the names of all the medications. *Id.* at 1. Miller instructed him to sign a medical release so she could obtain his medical records from Overton Brook VA Medical Center. *Id.* She also told him to ask a family member to bring his medications to the facility so she would know what to provide. *Id.* at 2.

---

[1] Plaintiff also utilizes the alternative spelling, "Pullins."

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

Plaintiff's sister brought his medication to the facility the next morning (Tuesday), but Plaintiff claims that he did not "hear from" Miller, and "no medication [was] on the pill cart." *Id.*

The following Thursday, Doctor Miller gave Plaintiff his prostate medication[3] and told him that she "planned to start [him] on" other medication on Friday. *Id.* Friday morning, Plaintiff received blood-pressure medication (Lisinopril), Ibuprofen, and "another pill . . . ." [doc. #s 4-1, p. 2; 10, p. 1]. Friday night, Plaintiff received prostate medication and Ibuprofen. [doc. # 4-1, p. 2]. He alleges, however, that when he asked for all of his medication a nurse told him that "they couldn't give it to [him] unless the doctor said so." *Id.* He asked "the nurses who pass out pills . . . about seeing the doctor about [his] medications and they all said that [he] would have to talk to the doctor about that. [sic]." *Id.* at 2-3. He claims: "I feel that Dr. Miller should have at least seen me again or passed the word to the next Dr. or nurse." [doc. # 10, p. 1].

Plaintiff alleges that on January 26, 2020, he slipped in the "chow hall," fell, and injured his back and neck. [doc. #s 1, p. 1; 4-1 pp. 3-4]. A physician arrived, checked his eyes and blood pressure, and gave him a "blood pressure pill." [doc. # 4-1, p. 3]. He tentatively claims that officials attempted to place him on a board but failed to "handle the board properly . . . ." *Id.*

Plaintiff claims that a doctor instructed others to transport him to a hospital in a "small minivan" instead of an ambulance. *Id.* He suggests that this was problematic because he is "6' 2" tall and weighs 225 lbs." and thus could not lay prone in the minivan. *Id.* He also claims that officials dragged, pulled, and twisted him into a wheelchair. *Id.* at 5. They handcuffed him and "stuffed" him into the minivan, which was "very painful." *Id.* Chris Combs drove the minivan, and Revend McDonald assisted in placing him in the minivan. *Id.*

---

[3] In an amended pleading, Plaintiff states that Miller supplied Finasteride and terazosin. [doc. # 10, p. 1].

2

Plaintiff was transported to Jackson Parish Hospital "with a back injury where x-ray results by the Dr. . . . determined that [he] had suffered a disc problem (bulging disc) and that [he] would need an operation. [sic]." [doc. # 1, p. 1]. A nurse checked his blood pressure, and he received a shot for his pain and swelling. [doc. # 4-1, pp. 4-5].

When Plaintiff returned to JPCC the same day, someone tested his blood pressure. *Id.* Doctor Miller questioned him about his fall and told him "not to walk much because she was afraid that [he] might fall . . . ." [doc. # 4-1, p. 4]. He did not see Miller again. *Id.* He claims that he has not received "a blood pressure check since . . . January 26, 2020." *Id.*

Plaintiff has "been in constant pain since" the fall. [doc. # 1, p. 2]. He claims that, despite several verbal requests and 48 written requests to see a physician to "follow on these findings[,]" he has not received a response. *Id.* at 1. By "findings," he presumably refers to the hospital physician's surgery recommendation. [See doc. # 10-1, p. 11].

On February 13, 2020, after several verbal and written requests "to go on sick call," he received an audience with Nurse Tiffany, who told him that she was prescribing Tylenol for his pain and that he would receive muscle relaxer for his nerve pain. [doc. # 4-1, pp. 4, 6]. She asked Plaintiff to sign "a legal document so she could get [his] medical records," but Plaintiff refused because he "already had . . . ." *Id.* at 6. Tiffany responded that she was aware, but "they did not get all of [his] medical records[.]" She informed Plaintiff that if he did not sign the document there was nothing she could "do" for him. *Id.* She also asked for a list of all of his medications, and Plaintiff replied that he already gave a list to Doctor Miller. *Id.* Tiffany then told Plaintiff that Doctor Miller "sent [his] medication back home." *Id.*

On February 15, 2020, Plaintiff submitted a request for care, in which he noted: "Medicine prescribed by Nurse Tiffany on February 13, 2020 for pain is not working, maybe it

3

takes time, I don't know." [doc. # 10-1, p. 2]. That said, Plaintiff now claims that Tiffany refused to provide "treatment of any kind." [doc. # 10, p. 2].

"A few days later," Plaintiff viewed a "chart on the pill cart" and saw that Dr. Mitcham, rather than Dr. Miller, prescribed his medication. [doc. # 10, pp. 2-3]. Plaintiff appears to claim that Dr. Miller should have prescribed his medication. *Id.*

On February 19, 2020, Plaintiff requested care for sinus congestion. [doc. # 4-1, p. 8]. On February 20, 2020, he requested care for sinus headaches, pain, and congestion. *Id.* On February 24, 2020, he noted in a request for care that he received medicine, but it "did not agree" with him. [doc. # 10-1, p. 16]. He asked to "see the warden about sick call" on March 2, 2020. On March 4, 2020, he received antibiotics. [doc. # 4-1, p. 8]. He tentatively claims, however, that at that time he had not seen a doctor or nurse since February 13, 2020, he had not received a blood-pressure check, and he had not received a temperature check. *Id.*

Plaintiff impliedly claims that, on March 5, 2020, nurses tested everyone but him for influenza. *Id.* On March 9, 2020, "a lady" checked his temperature and informed him that he contracted influenza. *Id.* He was quarantined and subsequently released on March 12, 2020. He impliedly claims that he only received a "temperature check," but he concedes that he also received antibiotics. *Id.* at 9.

Plaintiff claims that, on February 28, 2020, Major Leblanc threatened to charge him with fraud if he "brought a lawyer" to the facility. [doc. #s 1, pp. 1-2; 4-1, pp. 6-7]. He claims that, on March 31, 2020, Leblanc threatened to place him in lockdown if he did not stop abusing the sick-call system. *Id.* at 9. He claims that, the same day, Leblanc intercepted his request for care and attempted to prevent him from receiving care. [doc. # 10, p. 2]. He also suggests that Leblanc threatened to place him in lockdown if he continued to submit grievances. *Id.*

4

The night of February 28, 2020, an official manning the "pill cart" told Plaintiff that Doctor Miller prescribed Tylenol and penicillin. [doc. # 4-1, p. 7]. Plaintiff appears to claim that the official forced him to choose only one medication and that, as a result, he did not receive Tylenol. *Id.*

Plaintiff claims that officials refused to respond to his requests to access the law library. *Id.*

Plaintiff appears to claim that, the day of his release, Betty Pullij tricked him into signing a form and thereby relinquishing his right to drive. *Id.* at 9-11. Pullij allegedly withheld his driver's license, instructed him to sign a form with fading ink so he could be released, and, after he signed it, returned his license and stated, "Oh ya now you can't drive . . . [sic]." [doc. #s 4-1, pp. 9-1; 10, p. 2]. Plaintiff "feel[s] that this could be some type of entrapment." [doc. # 10, p. 2].

Plaintiff seeks medical care, $15,000,000.00 for his pain and suffering, $10,000,000.00 for mental anguish, and the removal of "Nurse Tiffany from her position." [doc. #s 1, p. 2; 4, p. 4].

## Law and Analysis

### 1. Preliminary Screening

Because Plaintiff is proceeding in forma pauperis, his Complaint is subject to screening under § 1915(e)(2). Section 1915(e)(2)(B) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact."

5

*Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148,

152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Medical Care**

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

7

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, before Plaintiff's incarceration, he suffered from an enlarged prostate, had "trouble urinating," and took 9-11 different medications. [doc. # 4-1, p. 2]. On January 20, 2020, he informed Doctor Miller that he needed his medications, but he could not remember the names of all the medications. *Id.* at 1. Miller told him to ask a family member to bring his medications to the facility so she would know what to provide. *Id.* at 2. Plaintiff's sister brought his medication to the facility the morning of January 21, 2020, but Plaintiff claims that he did not "hear from" Miller, and "no medication [was] on the pill cart." *Id.*

On January 23, 2020, Doctor Miller gave Plaintiff prostate medication[4] and told him that she "planned to start [him] on" other medication on January 24, 2020. *Id.* The morning of

---

[4] Miller supplied Finasteride and terazosin. [doc. # 10, p. 1].

8

January 24, 2020, Plaintiff received blood-pressure medication (Lisinopril), Ibuprofen, and "another pill . . . ." [doc. #s 4-1, p. 2; 10, p. 1]. That night, Plaintiff received prostate medication and Ibuprofen. [doc. # 4-1, p. 2].

Plaintiff seems to claim that he did not receive adequate medication from January 19, 2020, to either January 23 or 24, 2020. He alleges that, during the delay, he had trouble urinating and "pushed so hard trying to pee that [his] hemorrhoids gave [him] trouble." [doc. # 4-1, p. 2]. A "doctor or nurse gave" him hemorrhoidal ointment . . . ." *Id.*

While the undersigned is sympathetic to Plaintiff's plight, Plaintiff does not plead substantial harm resulting from the short delay.[5] C.f. *Galvan v. Calhoun Cty.*, 719 F. App'x 372 (5th Cir. 2018) (holding that an inmate stated a claim where he alleged that his repeated requests to be taken to the hospital for *severe, life-threatening* pain went unanswered by prison officials for several days); see *Chaisson v. Grounds*, 2014 WL 4652133, at *15 (E.D. Tex. Sept. 18, 2014).

To the extent Plaintiff claims that he did not receive *all* of the medications he used before his incarceration, he does not specify which medications he lacked for which serious medical need; as a result, he does not allege that he was exposed to a substantial risk of serious harm. Finally, even assuming he claims that Doctor Miller knew which medications he used prior to his incarceration yet chose not to provide all of them, he simply disagrees with Miller's professional opinion. The Court should dismiss these claims.

Next, Plaintiff appears to claim that Dr. Miller, rather than Dr. Mitcham, should have prescribed his medication because Mitcham did not diagnose him. [doc. #s 4-1, p. 9; 10, pp. 2-

---

[5] As above, "a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. *Blank*, 634 F. App'x at 448.

9

3]. Absent elaboration, this allegation does not reflect deliberate indifference to a substantial risk of serious harm. See *Petzold v. Rostollan*, 946 F.3d 242, 250 (5th Cir. 2019) ("Petzold argues that the prescribed 'treatment' was not based on an evaluation . . . . But, because medical treatment was provided, even if it was negligent, disagreed-with, and based on a perfunctory and inadequate evaluation, it was not denied."). The Court should dismiss this claim.

Next, Plaintiff claims that Nurse Tiffany refused to provide "treatment of any kind." [doc. # 10, p. 2]. However, Plaintiff concedes that, on February 13, 2020, after several verbal and written requests "to go on sick call," he received an audience with Nurse Tiffany, who told him that she was prescribing Tylenol for his pain and that he would receive muscle relaxer for his nerve pain. [doc. # 4-1, pp. 4, 6]. She asked him to sign "a legal document so she could get [his] medical records," but Plaintiff refused because he "already had . . . ." *Id.* at 6. Tiffany responded that she was aware, but "they did not get all of [his] medical records[.]" She informed Plaintiff that if he did not sign the document, there was nothing she could "do" for him. *Id.* She also asked for a list of all of his medications, and Plaintiff replied that he already gave a list to Doctor Miller. *Id.* Tellingly, on February 15, 2020, Plaintiff submitted a request for care, noting: "Medicine prescribed by Nurse Tiffany on February 13, 2020, for pain is not working, maybe it takes time, I don't know." [doc. # 10-1, p. 2].

Plainly, Nurse Tiffany did not refuse to provide treatment of "any kind" as Plaintiff claims. Plaintiff simply quarrels with the care Tiffany *did* provide. To the extent she did not provide all medications Plaintiff used before his incarceration, she was not deliberately indifferent: she did not know which medications he desired because he refused to sign the "legal document" and refused to provide a list of the medications. To the extent he faults Tiffany or

Doctor Miller for failing to communicate and arrange the proper care/medication, he describes negligence, at best.

The Court should dismiss these claims.

### 3. Failure to Identify a Responsible Defendant

Plaintiff tentatively claims:

° Following his fall and injuries on January 26, 2020, officials attempted to place him on a board but failed to "handle the board properly . . . ."

° A doctor instructed others to transport him to a hospital in a "small minivan" instead of an ambulance.

° Officials dragged, pulled, and twisted him into a wheelchair. They handcuffed him and "stuffed" him into the minivan, which was "very painful."

° He has not received "a blood pressure check since . . . January 26, 2020."

° He has "been in constant pain since" the fall. Despite several verbal requests and 48 written requests to see a physician to "follow on these findings[,]" he has not received a response.

° From February 13, 2020, to March 4, 2020, he had not seen a doctor or nurse, he had not received a blood-pressure check, and he had not received a temperature check.

° On March 5, 2020, nurses tested everyone but him for influenza. On March 9, 2020, "a lady" checked his temperature and informed him that he contracted influenza. He only received a "temperature check."

° The night of February 28, 2020, an official manning the "pill cart" told him that Doctor Miller prescribed Tylenol and penicillin. Plaintiff appears to claim that the official forced him to choose only one medication and that, as a result, he did not receive Tylenol.

° Officials refused to respond to his requests to access the law library.

The undersigned previously instructed Plaintiff to "identify each person he seeks relief from (i.e. identify each defendant) and to provide a separate description of what, exactly, each defendant did to violate his rights . . . ." [doc. # 9, p. 5]. The undersigned also advised: "With

11

respect to *each* separate claim concerning the denial of care, Plaintiff should separately identify a responsible defendant . . . and explain *how* that defendant was deliberately indifferent to a substantial risk of serious medical harm to him." *Id.*

With respect to the allegations above, Plaintiff either (1) does not intend to raise a claim or (2) intends to raise a claim but fails to identify a responsible defendant.[6] The Court should dismiss these ostensible claims.

**4. Major Leblanc**

Plaintiff claims that, on February 28, 2020, Major Leblanc threatened to charge him with fraud if he "brought a lawyer" to the facility. [doc. # 1, pp. 1-2; 4-1, pp. 6-7]. He claims that, on March 31, 2020, Leblanc threatened to place him in lockdown if he did not stop abusing the sick-call system. [doc. # 4-1, p. 9]. The same day, Leblanc intercepted his request for care and attempted to prevent him from receiving care. [doc. # 10, p. 2]. He also suggests that Leblanc threatened to place him in lockdown if he continued to submit grievances. *Id.*

For relief, Plaintiff first seeks medical care. However, his request is moot because he is no longer a prisoner at JPCC.[7] See *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (determining that an inmate's transfer to a different unit rendered claims for declaratory and injunctive relief moot); *Weathington v. United States*, 694 F. App'x 966, 967 (5th Cir. 2017) (dismissing a claim concerning dental care as moot because the plaintiff was transferred); *Cooper v. Thomas*, 101 F. App'x 983, 984 (5th Cir. 2004) ("Cooper's request for a medical

---

[6] While he mentions that Chris Combs drove the minivan and that Revend McDonald assisted in placing him in the minivan, he does not name Combs or McDonald as defendants.

[7] Plaintiff does not allege or suggest that there is a reasonable, demonstrable probability that he will be transferred back to JPCC. See *Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir. 1975); *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).

examination and chest x-ray became moot upon his transfer to the state penitentiary."); *Lee v. Richland Par. Det. Ctr.*, 483 F. App'x 904 (5th Cir. 2012) (affirming the finding, in an action against a warden and medical staff, that the detainee's request for injunctive relief concerning denial of medical care was moot because the detainee was no longer housed at the detention center); see also *North Carolina v. Rice*, 404 U.S. 244, 246 (U.S. 1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.").

Plaintiff also seeks compensation for his mental anguish, his pain, and his suffering. [doc. #s 1, p. 2; 4, p. 4]. Under 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). "The 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

Plaintiff "brought" this action when he was incarcerated, [doc. # 1], and he seeks monetary compensation for only mental, emotional, or de-minimis physical injuries he suffered in custody.

While he alleges that he suffered pain, he does not allege that Leblanc caused his pain. Rather, he alleges that Leblanc only threatened him. Even construing the allegations liberally

13

and in Plaintiff's favor, he does not allege, for instance, that Leblanc caused him pain by causing others to deny him medical care. Even he did allege this, it is manifest that Plaintiff received care. He does not allege that he suffered a more-than-de-minimis physical injury or any other injury compensable by monetary relief.

As Plaintiff does not seek any cognizable relief for his claims against Leblanc, the Court should dismiss them.[8]

**5. Betty Pullij**

Plaintiff appears to claim that, the day of his release, Betty Pullij tricked him into signing a form and thereby relinquishing his right to drive. Pullij allegedly withheld his driver's license, instructed him to sign a form with fading ink so he could be released, and, after he signed it, returned his license and stated, "Oh ya now you can't drive . . . [sic]." [doc. #s 4-1, pp. 9-1; 10, p. 2]. Plaintiff "feel[s] that this could be some type of entrapment." [doc. # 10, p. 2].

Plaintiff's only relevant request for relief is for compensation. However, he does not allege that he suffered a more-than-de-minimis physical injury or any other injury compensable by monetary relief. At best, he seeks compensation for only mental or emotional injuries. As he does not seek any cognizable relief for this claim, the Court should dismiss it. See 42 U.S.C. § 1997e(e).

**6. JPCC**

Plaintiff names JPCC as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an

---

[8] Of note, Plaintiff did not, prior to filing this proceeding, exhaust the claims against Leblanc arising on March 31, 2020. He filed this proceeding on March 30, 2020, at the latest. [doc. # 1-2]. The undersigned, however, does not recommend dismissal on this basis.

14

entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. JPCC does not qualify as a juridical person. Accordingly, the Court should dismiss Plaintiff's claims against JPCC.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Johnny N. Loyd's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 25th day of June, 2020.

Karen L. Hayes
United States Magistrate Judge